## PEOPLE v. BISBEE.

(Supreme Court, Appellate Term, First Department.  June 14, 1915.)

1. GAME ⬧—8—CONSERVATION STATUTE—CONSTRUCTION—PENAL LAWS.

Conservation Law (Consol. Laws, c. 65) §§ 176, 178, as amended by Laws 1913, c. 508, restricting the transportation and importation of game, and section 182, imposing a penalty for the violation of such laws, must be strictly construed as penal laws, and the penalty cannot be recovered, unless the act of the defendant is expressly, and not impliedly, prohibited.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 8; Dec. Dig. ⬧—8.]

2. GAME ⬧—8—REGULATION—TRANSPORTATION.

Conservation Law, § 176, prohibiting the taking of game except as therein authorized, and section 178, forbidding common carriers from transporting game without a shipping permit, apply only to acts within the state, since it will not be presumed that the Legislature intended to regulate acts outside of the state, which were beyond its jurisdiction.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 8; Dec. Dig. ⬧—8.]

3. GAME ⬧—8—REGULATION—TRANSPORTATION.

Conservation Law, § 178, subd. 4, permitting the transportation of game under certain restrictions, does not apply to one who shipped game from without the state, consigned to himself within the state, but who was not shown to have received it within the state, or to have been in the state when it arrived.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 8; Dec. Dig. ⬧—8.]

4. GAME ⬧—8—REGULATION—CONSTRUCTION OF STATUTE.

That section does not prohibit the importation of game in a manner other than as permitted by it.

[Ed. Note.—For other cases, see Game, Cent. Dig. § 8; Dec. Dig. ⬧—8.]

5. STATUTES ⬧—181—CONSTRUCTION—REASONABLENESS.

Statutes should be construed so as to render them practicable and reasonable, and to avoid absurdity and manifest injustice.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 263; Dec. Dig. ⬧—181.]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the People against Eldon Bisbee to recover penalties for violation of the Conservation Law.  Judgment for the defendant, and the People appeal.  Affirmed.

Argued May term, 1915, before GUY, LEHMAN, and WHITAKER, JJ.

Egburt E. Woodbury, Atty. Gen. (Robert P. Beyer, of New York City, of counsel), for the People.

Rushmore, Bisbee & Stern, of New York City (Abraham Freedman, of New York City, of counsel), for respondent.

WHITAKER, J.  The conceded facts are as follows:

"This is an action brought to recover $310, penalties prescribed by section 182 of the Conservation Law for the alleged violation of section 178, subd. 4, of that law.  The act done was the shipment through the American Express Company into this state by the defendant from the state of Maine on the 7th day of October, 1913, of ten partridges consigned to himself in the borough of Manhattan, city of New York.  The defendant is a resident of said city and borough, and took the partridges in the state of Maine during the open season

there existing therefor. He had, before taking the partridges, procured a license from the proper authorities of that state which authorized him to do so, paying therefor the sum of $25, and complied with all the laws of the state of Maine in that respect. At the time of shipment the partridges were lawfully owned by, and were lawfully in the possession of, the defendant, and were lawfully shipped by him out of the state of Maine. They were contained in a box of open construction, so arranged as to expose to view the contents thereof. A tag from the license aforesaid was attached to the box, upon which tag was stated the number of the license and the fact that the partridges contained in the box were taken in Maine by the defendant, who was licensed by the state of Maine to take and ship them, and that they were shipped by him, and his name and address as consignee. No shipping permit or importation license issued by the authorities of the state of New York accompanied the partridges. They arrived in the state during the season when it was lawful for partridges to be taken in this state and there used by persons lawfully taking the same."

[1] The statutes sought to be enforced are penal, and must, of course, be strictly construed. The act of defendant complained of must be expressly, and not impliedly, prohibited. Section 176 provides, so far as material, as follows:

"No person shall, at any time of the year, pursue * * * birds, * * * transport, or have the same in possession, except as permitted by this article. * * *"

[2] Section 178, forbidding the transportation, etc., applies only to common carriers. · This statute could have no application outside the state of New York. It is fair to presume, therefore, that it means transportation within the state. This is quite evident when we read section 176 in connection with subdivision 1 of section 178. Taking these two provisions together, it becomes plain that they were only intended to apply to transportation within the state. It cannot be presumed that the Legislature attempted to regulate the taking, etc., and the transportation of game and the acts of common carriers outside the state of New York.

[3, 4] Section 176 is the prohibitive section, and unless the defendant is clearly shown to have done something which that section expressly, and not impliedly, prohibits, the judgment must be affirmed. Subdivision 4 of section 178 provides as follows:

"Importation of fish and game not lawfully salable. The taker may, between the 16th day of September and the 1st day of January following, both inclusive, bring into this state otherwise than by common carrier or parcel post wild game or fish which may be lawfully brought from the place where taken and when lawfully taken by him and at a distance not less than fifty miles from the border of this state, if of species which may not be lawfully sold in this state at any time provided he accompanies the same and shall have with him a license issued by the commission permitting such importation.

"The taker holding such importation license may in the same case import into this state by common carrier, except by parcel post, such wild game or fish, provided the same or the package containing them shall have affixed thereto, before shipment, a shipping permit issued, attached and filled in as provided in subdivision 3 of this section.

"The taker without holding such importation license, but who accompanies the same, may bring into this state otherwise than by common carrier or parcel post during the open season therefor provided herein and if lawfully brought from the place where taken and when lawfully taken by him at any point without the state, wild game or fish when of species which may not be lawfully sold within this state at any time, or the same may be shipped by

him by common carrier except by parcel post, but in that case the require-
ment of subdivision 3 of this section as to shipping permits shall apply.

"Such wild game or fish when imported into this state as permitted under
this subdivision may be possessed during the said periods."

It will be noticed that this subdivision refers exclusively to *importa-tion,* not to transportation. And even if it be held that the prohibitive
clause in section 176 applies, it could not apply to the act of the de-
fendant complained of, because he shipped them from the state of
`Maine. The misdemeanor, if there was one, was committed when de-
fendant shipped them in Maine. So that, as matter of fact, there be-
ing no evidence in this case that the defendant received them in the
state of New York, or that he was here when they arrived, he did not
import them at all. He may, perhaps, have exported, but he certainly
did not import them; but, even assuming that the defendant shipped
them in Maine, and came with them, and that he received them in New
York personally, and that such shipment and receipt of the birds here
constitute such a continuous act as to constitute an importation of the
birds, the judgment must stand. Section 176 does not relate to im-
portation, but to transportation. Importation is not expressly pro-
hibited by that section. There is no question but that the person who
drew the act intended prohibiting the importation without compliance
with subdivision 4, but that he has not done so is, I think, clear. My
conclusion is that section 176 only applies to birds, animals, and *trans-portation* within the state of New York; that section 178 permits birds
to be imported and brought into the state under certain conditions, but
contains no prohibition and prescribes no penalty for importing or
bringing them in otherwise than in the manner prescribed by that sec-
tion.

[5] Penal statutes should not be extended to cases not clearly with-
in their provisions. Statutes should receive such construction as to
render them practicable, just, and reasonable. See Rosenplaenter v.
Roessle, 54 N. Y. 262. They should be so construed as to avoid ab-
surdity and manifest injustice. People v. Jaehne, 103 N. Y. 182, 8 N.
E. 374. Under the statement of agreed facts, it would certainly be
unjust and unreasonable to compel the defendant to pay the fines sued
for. It is most important and beneficial to the people that the game
in the state should be protected and preserved. Such actions as the
present one, however, do not tend to promote such protection and
preservation, but tend to prejudice the people against all game laws
and their enforcement.

Judgment is affirmed, with costs.

GUY, J., concurs.

LEHMAN, J., concurs, on the ground that the acts of the respond-
ent were legal in Maine, and the provisions of the Conservation Law
do not attach to a shipment of foreign game until its arrival at the
point of destination and delivery there to the consignee.